ALBUQUERQUE NATIONAL BANK, Executor and Trustee of the Estate of Gladys S. Powell, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 76–448.

United States District Court, D. New Mexico.

Jan. 5, 1978.

Paul A. Phillips, Albuquerque, N. M., for plaintiff.

Fred W. Schwendimann, Tax Division, Dept. of Justice, Dallas, Tex., Victor R. Ortega, U. S. Atty., Albuquerque, N. M., for defendant.

## MEMORANDUM OPINION

PAYNE, Chief Judge.

THIS MATTER having come on for consideration upon the stipulation of facts submitted by the parties. The Court has considered the stipulation of facts filed by the parties, the briefs, together with the exhibits and the entire file in this cause and concludes that the defendant should prevail and judgment entered in its favor.

The matter in controversy involves an assessed tax deficiency of $16,699.20, which includes interest. The Internal Revenue Service Commissioner following an audit of the federal estate tax return of Gladys S. Powell (hereinafter referred to as the decedent) assessed the deficiency. The plaintiff paid the deficiency assessment and shortly thereafter initiated this action to recover the payment.

Upon the death of decedent, the Government claimed that the trust agreement of August 30, 1968, created a general power of appointment in the decedent. At issue in the action at bar is whether the decedent possessed a general power of appointment over the corpus of the trust, so that the entire corpus is includable in her gross estate, for federal estate tax purposes.

The record stipulations indicate that the agreement which created the trust at issue was executed on August 30, 1968. Both the decedent, and her predeceased husband, William Humphreys Powell, were settlors of the trust, each having contributed his or her proportionate share of the community property which made up the principal corpus of the trust. The Albuquerque National Bank, plaintiff herein, was named trustee in the agreement.

So long as both settlors were living, the trust was expressly revocable, and the set-

tlors had the discretion to invade the principal of the trust for their own use and benefit. The ultimate beneficiary of the trust, however, was William Stull Powell, or his descendants, if he should predecease the settlors. The trust became irrevocable, upon the death of one of the settlors, although the surviving settlor still retained certain powers or rights with respect to the trust corpus.

On April 28, 1972, William H. Powell died, so that the trust established by the agreement of August 30, 1968, was irrevocable from that date. At the time of Mr. Powell's death, the trustee apparently determined that Mrs. Powell and the estate of Mr. Powell each had a fifty percent interest in the trust corpus. However, since certain charges for taxes and debts were payable out of the principal of the trust, the proportionate interest of the deceased husband's estate in trust corpus was apparently reduced. Therefore, upon the death of Mrs. Powell almost fifteen months later, the trustee apparently determined that her estate's proportionate interest in trust assets was actually 54 percent of the corpus then subject to the agreement of August 30, 1968. Accordingly, the remaining 46 percent of trust corpus was determined to be attributable to the interest of Mrs. Powell's predeceased husband.

It is important to note that there is no dispute concerning the inclusion of 54 percent of the trust corpus in the decedent's gross estate. Thus, the plaintiff acknowledges that the portion of trust corpus attributable to the decedent's own contribution of property must be included in her gross estate, for federal estate tax purposes. Therefore, the question before this Court pertains only to the 46 percent of trust property attributable to contributions made originally by the decedent's husband.

If, under the trust agreement of August 30, 1968, the decedent possessed a general power of appointment with respect to the entire trust corpus, then that entire trust corpus is includable in the decedent's gross estate, pursuant to Title 26 U.S.C. section 2041 of the Internal Revenue Code of 1954.[1]

The Government contends that the decedent did possess a general power of appointment by virtue of her right to incur debts which the trustee would then be obligated to satisfy out of the principal of the trust, if those debts were unpaid at the time of her death. The Government argues that paragraph II–4 of the trust agreement created a general power of appointment in the decedent. Paragraph II–4 of the trust agreement provides in pertinent part:

Upon the death of the survivor of the settlors, the trustee shall pay all inheritance and estate taxes, state and federal, attributable to the assets of the trust estate, which may become due on account of the death of the last settlor, and interest and penalty thereon, if any, and all expenses incident to the making of appropriate returns and establishing the amount due thereunder. The trustee shall also pay from said balance, debts of the last settlor to die and any administration expenses of his or her estate and expenses of last illness and funeral. After payment of the foregoing from said balance, and after payment of expenses of the trust to date, the remainder of such balance shall be distributed by the trustee as follows: . . . . .

The Internal Revenue Service has issued regulations interpreting 26 U.S.C. section 2041, in pertinent part as follows:

(a) *Introduction.* A decedent's gross estate includes under section 2041 the value of property in respect of which the decedent possessed, exercised, or released certain powers of appointment.

(b) *Definition of "power of appointment"*

(1) *In general.* The term "power of appointment" includes all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of local property law connotations.

(c) *Definition of "general power of appointment"*

---

1. Section 2041(b)(1) defines "general power of appointment" as "a power which is exercisable in favor of the decedent, [her] estate, [her] creditors, or the creditors of [her] estate."

(1) *In general.* The term "general power of appointment" as defined in section 2041(b)(1) means any power of appointment exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate, except (i) joint powers to the extent provided in §§ 20.2041–2 and 20.2041–3, and (ii) certain powers limited by an ascertainable standard, to the extent provided in subparagraph (2) of this paragraph. A power of appointment exercisable to meet the estate tax, or any other taxes, debts, or charges which are enforceable against the estate, is included within the meaning of a power of appointment exercisable in favor of the decedent's estate, his creditors, or the creditors of his estate. A power of appointment exercisable for the purpose of discharging a legal obligation of the decedent or for his pecuniary benefit is considered a power of appointment exercisable in favor of the decedent or his creditors.

The Tenth Circuit recognizes the proposition that all property which is subject to a general power is included in the decedent's estate regardless of whether the power has been exercised. *See Maytag v. United States,* 493 F.2d 995 (10th Cir. 1974). Therefore, existence of the property interest held by the decedent is all that is required to determine taxability. *See, e. g., Henslee v. Union Planters Bank,* 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949).

Plaintiff argues that Article III of the trust agreement created a power of appointment in decedent over one-half of the trust corpus. Reasoning that Article III, not Article II deals with the power, or lack of it, to alter, amend, or modify, invade and change beneficial enjoyment of the trust.[2]

The weakness in the theory of the plaintiff is that the trust language in the case *sub judice* provides that the trustee shall pay from the corpus "the debts of the last settlor to die . . .." This provision appears to the Court to create a general power of appointment in the decedent.

**2.** Paragraph III(c) provides: If the Settlor Gladys S. Powell is the surviving Settlor, she may alter and change the provisions of said

The Court, therefore finds and concludes that the trust agreement executed August 30, 1968, created a general power of appointment in the decedent. Judgment will be entered in favor of defendant and against plaintiff.

subparagraphs (a) and (b) of Article II, or both thereof, as to not more than one-half the Trust Estate.